Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| PIERO PANDOLFI DE RINALDIS SANTAELLA<br><br>Recurrido<br><br>V.<br><br>ABB INSTALLATION PRODUCTS CARIBE, LLC.<br><br>Peticionario | TA2026CE00546 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2025CV03010<br><br>Sobre: Despido Injustificado (Ley 2, Ley 80) |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda del Toro y la Jueza Lotti Rodríguez.

*Grana Martínez, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de junio de 2026.

El 4 de mayo de 2026 ABB Installation Products Caribe LLC, en adelante la compañía o la peticionaria presentó recurso de Certiorari. Nos solita que revoquemos una determinación interlocutoria emitida por el Tribunal de Primera Instancia denegando una Moción de Sentencia Sumaria dentro de una reclamación laboral tramitada al amparo del proceso sumario de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como la Ley de Procedimiento Sumario de Reclamaciones Laborales, 32 LPRA sec. 3118 *et seq.* Los hechos esenciales para comprender nuestra determinación son los siguientes.

I

El recurrido, señor Piero Pandolfi De Rinaldis Santaella presentó una querella contra la peticionaria por despido injustificado mediante el procedimiento sumario laboral. Sus alegaciones son las siguientes. El 18 de junio de 2024, su supervisor le informó que unos policías lo estaban buscando y le dijo que

saliera de los predios de la planta para evitar inconvenientes. Los policías lo buscaban porque, su expareja presentó seis querellas graves en su contra y obtuvo una orden de protección exparte. Como resultado, se expidió una orden de arresto en su contra. Fue encarcelado porque no pudo prestar la fianza impuesta. El 20 de junio, su abogado solicitó la reducción de la fianza e intentó infructuosamente comunicarse con el patrono para informar la situación. El 21 de junio, el tribunal redujo la fianza y ordenó la excarcelación. Fue excarcelado como a las diez de la noche. El 23 de junio, llamó a su supervisor para informarle lo sucedido y su intención de reinstalarse al trabajo, aunque fuera remotamente. Su supervisor le informó que iban a comunicarse con él, y que violó el manual de la empresa porque no se reportó a trabajar por tres días consecutivos. El 5 de junio, fue notificado mediante un correo electrónico de su terminación en el empleo efectivo el 25 de junio de 2024.[1]

La peticionaria negó las alegaciones en su contra y arguyó que el despido fue justificado, porque el apelado: (1) abandonó el empleo por más de tres días consecutivos sin comunicarse con el supervisor y (2) se presentaron acusaciones graves de violencia doméstica en su contra de las que se declaró culpable. El patrono invocó su interés de preservar la integridad de sus empleados y el buen y normal funcionamiento de la compañía. Por último, adujo que el apelado violó la política pública de la empresa contra la violencia doméstica.[2]

Posteriormente, la peticionaria solicitó sentencia sumaria a su favor, porque no existía controversia de que el despido estuvo basado en justa causa. El querellado adujo que probó que el

---

[1] Véase Entrada núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) ante el Tribunal de Primera Instancia (TPI).
[2] Entrada núm. 5, SUMAC del TPI.

querellante: (1) abandonó por tres días consecutivos su empleo sin notificarlo al patrono y (2) fue arrestado por cargos graves de violencia doméstica que incluyeron agresión sexual, escalamiento y apuntar o disparar con un arma de fuego. Según el patrono, ambas conductas violentaron la política de la empresa y estaban sancionadas en el manual que entregan a sus empleados. Fue enfático en que su política era de cero tolerancia a la violencia doméstica. Su representación legal argumentó que el recurrido no tenía derecho a presunción de inocencia, para propósitos de las leyes laborales y que el patrono no estaba obligado a esperar a una etapa posterior del proceso criminal para despedirlo. Además, advirtió que una interpretación distinta sería contraria a lo resuelto en *González Santiago v. Baxter Healthcare,* 202 DPR 281 (2019). Según la peticionaria el recurrido violó el deber básico de no incurrir en conducta impropia desordenada, delictiva o inmoral que ponga en riesgo los mejores intereses del patrono. Su representación legal citó la Ley Núm. 4-2017, donde está esa exigencia.[3]

El recurrido se opuso porque la justificación del despido estaba en controversia. Su representación legal argumentó que existía controversia sobre las violaciones al protocolo de violencia doméstica. Según este, cuatro de las seis denuncias en su contra eran deliberadamente falsas y fue exonerado de las otras dos.[4]

No obstante, el recurrido también solicitó sentencia sumaria a su favor. Adujo que no existía controversia de que: (1) su ausentismo le ocasionó una situación fuera de su control y (2) el patrono conocía esa situación, porque la policía lo buscó en sus facilidades. Según el recurrido, las querellas de violencia doméstica y su desenlace no justificaron su despido, porque no violó la política de la empresa a esos efectos. Su representación legal alegó que la

---

[3] Entrada núm. 34, SUMAC del TPI.
[4] Entrada núm. 39, SUMAC del TPI.

información que conocía el patrono no era lo suficientemente confiable para justificar el despido. Por otro lado, adujo que (1) la peticionaria violó la norma de disciplina progresiva, (2) el manual de la empresa no advertía cual era la conducta prohibida y sus penalidades y (3) no existía evidencia de que el manual que recibió en mayo 2021 era el que el patrono utilizó en mayo de 2024.[5]

La peticionaria se opuso a la moción de sentencia sumaria en su contra. Su representación legal adujo que el patrono no estaba obligado a informar todas las razones que motivaron el despido. No obstante, la peticionaria alegó que consideró tanto el ausentismo como el récord criminal del recurrido.[6]

Posteriormente, ambas partes presentaron escritos en apoyo a sus respectivas posiciones.

El TPI atendió las mociones de sentencia sumaria presentadas por ambas partes y sus respectivas oposiciones. El foro apelado denegó ambas mociones de sentencia sumaria porque existía controversia de hechos materiales.[7] Sin embargo, determinó que no existía controversia sobre los hechos a continuación:

El 18 de junio de 2024 unos policías buscaron al querellante en las facilidades de la querellada. La encargada de Recursos Humanos pidió a los agentes que primero le permitieran hablar con él. El querellante fue informado en la Oficina de Recursos Humanos de la intención de la policía. Se comunicó con su abogado y lo instruyó a encontrarse en su oficina. El querellante salió con el conocimiento y permiso del patrono para responder a unas alegaciones de violencia doméstica. Posteriormente, llamó a su jefe para informarle que iba camino al cuartel a enfrentar los cargos en su contra. El 18 de junio de 2024, fue encarcelado porque no pudo

---

[5] Entrada núm. 35, SUMAC del TPI.
[6] Entrada núm. 44, SUMAC del TPI.
[7] Entrada núm. 54, SUMAC del TPI.

prestar la fianza. Posteriormente, obtuvo una reducción de fianza, pero tuvo que permanecer bajo arresto domiciliario y con un grillete electrónico.[8]

Otros hechos determinados por el TPI son los siguientes. El querellante no volvió a comunicarse con su supervisor hasta el domingo 23 de junio de 2024. Su supervisor le explicó que de Recursos Humanos se comunicarían con él. El martes 25 de junio de 2024, fue informado de que fue despedido por ausentarse tres días. El querellante pidió que se pusiera todo por escrito. El 10 de julio de 2024, recibió un documento con fecha de 25 de junio de 2024 la Notificación de Terminación de Empleo, pero no se citó la causa o razón. El despido no se debió a su desempeño.[9]

Según consta en la Resolución de 17 de junio, la excompañera sentimental del querellante solicitó una orden de protección y presentó cuatro denuncias en su contra. Su expareja lo acusó de escalamiento, apuntarle con un arma de fuego y una violación mediante penetración digital. La solicitud de orden de protección fue sustentada con dos declaraciones juradas de la víctima. [10]

Las determinaciones de hechos siguientes estaban basadas en el Manual del Empleado. Según el manual existen conductas que pueden ocasionar sanciones disciplinarias e incluso el despido, aunque no estén contenidas en el mismo. Dicho manual contiene un protocolo sobre violencia en el lugar de trabajo y de violencia doméstica. El protocolo establece que esos actos no estaban permitidos en el lugar de trabajo. Además, proporciona las medidas y procedimientos a seguir, cuando un empleado es víctima en violencia en el lugar de trabajo o de violencia doméstica. El manual, además, contiene las normas de asistencia. Los empleados que

---

[8] Entrada Núm. 54, SUMAC del TPI, Determinaciones de hechos 4, 6, 8, 10-11, 13 de la Resolución recurrida.
[9] Id., Determinaciones de hechos 14-15, 17-19 y 21 de la Resolución recurrida.
[10] Id., Determinaciones de hechos 22 y 23 de la Resolución recurrida.

incurran en ausencias excesivas o demuestren un patrón de ausentismo estarán sujetos a acciones disciplinarias incluyendo el despido. La ausencia no autorizada por tres días consecutivos sin notificar al supervisor, generalmente se considera abandono de trabajo y provocará el despido. Según lo dispuesto en el manual, justifica el despido: (1) incurrir en conducta, durante y fuera de horas de trabajo, que viole la decencia común y la moral y que razonablemente pueda afectar los mejores intereses del patrono, (2) haber sido convicto de un delito que podía implicar depravación moral, sea de naturaleza sexual, envuelva el uso de posesión o distribución de drogas o afecte la imagen de la compañía, (3) ausentarse por tres días consecutivos sin notificar su ausencia, (4) un patrón de ausencias o tardanzas.[11]

El TPI determinó que los pasos del procedimiento disciplinario de la querellada eran los siguientes: (1) una sesión verbal documentada de orientación, (2) procedimiento de acción disciplinaria y generalmente consistía en una amonestación escrita y o suspensión de empleo y sueldo por un tiempo determinado, (3) última amonestación escrita y o suspensión de empleo y sueldo por un período determinado, (4) generalmente era el despido, si la conducta no mejoraba o el empleado violentaba nuevamente las reglas, la política o procedimientos de la compañía. Dentro de las conductas prohibidas estaban incluidas las que afectara el buen funcionamiento, marcha, imagen y reputación de la empresa. La querellada se reservó el derecho de administrar la disciplina como estimara necesaria, incluyendo comenzar en cualquiera de los pasos anteriores y considerar otras faltas no incluidas en el manual. El patrono contestó a una comunicación enviada por el Departamento

---

[11] Id., Determinaciones de hechos 24 a 28 de la Resolución recurrida.

del Trabajo que el querellante fue despedido porque no siguió las reglas del manual.[12]

No obstante, el TPI se negó al resolver sumariamente el caso porque existía controversia sobre los hechos medulares siguientes:

(1)    La causa del despido.

(2)    Si la ausencia del querellante fue voluntaria o respondió a una causa justificada que impedía su comparecencia y notificación.

(3)    Si el despido estuvo o no justificado.

(4)    Si el querellante tenía derecho a mesada y, de tenerlo, cuál era la cuantía.

La peticionaria presentó este recurso en el que alega que:

A.    Erró el TPI y abusó de su discreción al denegar la Moción de Sentencia Sumaria de ABB a base de controversias de derecho erróneamente caracterizadas como hechos en controversia.

B.    Erró el TPI y abusó de su discreción al identificar como hecho controvertido las causas del despido de Pandolfi cuando su despido por abandono de empleo es un hecho incontrovertido en la propia Resolución.

*i La norma apoya la justa causa en despidos por abandono del empleo.*

*ii El asunto de las ausencias de Pandolfi fueron o no voluntarias es irrelevante y no es una controversia de hecho, sino de derecho que no impide dictar sentencia sumaria.*

C.    Erró el TPI y abusó de su discreción al encontrar como hecho controvertido que ABB despidió a Pandolfi por sus delitos graves de violencia doméstica y otros que son hechos incontrovertidos en la propia Resolución.

*i De la Resolución surge que ABB despidió a Pandolfi por sus delitos graves.*

*ii El TPI abusó de su discreción al no encontrar incontrovertidos hechos materiales de ABB que Pandolfi admitió no rebatió conforme la Regla 36.3*

*iii ABB despidió a Pandolfi con justa causa por sus delitos graves conforme la Ley Núm. 80 y su jurisprudencia interpretativa.*

---

[12] Id., Determinaciones de hechos 29 a 31 de la Resolución recurrida.

## II

**El certiorari**

El Tribunal Supremo de Puerto Rico estableció los criterios para la expedición de un certiorari en *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Nuestro máximo intérprete de la ley local definió el certiorari como un mecanismo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. La opinión ratifica lo previamente expresado en *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *McNeil Healthcare v. Mun. de Las Piedras I,* 206 DPR 391, 403 (2021), *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020). La característica principal del certiorari es la discreción que tiene el tribunal para atenderlo. Discreción que ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial cuyo ejercicio persigue el objetivo de llegar a una conclusión justiciera. *Rivera et al. v. Arcos Dorados et al., 214* supra, pág. 210.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, establece los preceptos que rigen la discreción del Tribunal de Apelaciones para expedir un recurso de certiorari. Según lo establecido en la Regla 52.1 *supra,* el recurso de certiorari solamente se expedirá para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. El Tribunal de Apelaciones lo expedirá únicamente, cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción, podrá revisar órdenes o resoluciones interlocutorias del Tribunal de Primera Instancia sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos que revistan interés público o en cualquier otra situación en la cual

esperar a la apelación constituiría un fracaso irremediable de la justicia.

A fin de que el Tribunal de Apelaciones pueda ejercer su discreción prudentemente, la Regla 40 de su reglamento, 4 LPRA Ap. XXII, establece los criterios que debería considerar para determinar si procede la expedición de un auto de certiorari. El texto de la regla citada es el siguiente.

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
>
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**Sentencia Sumaria**

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. *Soto y otros v. Sky Caterers,* 2025 TSPR 3; 215 DPR ___ (2025). No obstante, para que proceda es necesario que, de los documentos no controvertidos, surja qué no hay controversia real y sustancial sobre

los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *BPPR v. Cables Media,* 2025 TSPR 1, 2015 DPR ___ (2025); *BPPR v. Zorrilla y otros,* 214 DPR 329, (2024); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024), *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

Ahora bien, la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, exige el cumplimiento de ciertos requisitos. La parte contra quien se haya formulado una reclamación podrá presentar una moción de sentencia sumaria, no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, según lo dispuesto en la Regla 36.2, 32 LPRA Ap. V. Además, la regla contiene los requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra.* La sentencia sumaria no puede dictarse cuando, (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Consejo Tit. v. Rocca Dev. Corp. et als.,* 215 DPR __ (2025); *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

El Tribunal Supremo de Puerto Rico ha resuelto que el uso de la sentencia sumaria no es aconsejable en casos complejos en los que no existe controversia sobre elementos subjetivos, de intención, propósitos mentales, negligencia o credibilidad. *Soto y otros v. Sky Caterers,* supra. No obstante, eso no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención, como en los casos de discrimen, cuando de los documentos a ser considerados surge que no existe controversia de hechos materiales. *Soto y otros v. Sky Caterers,* supra.

En cuanto a las declaraciones juradas en apoyo y en contra de la moción de sentencia sumaria estas tienen que estar basadas en el conocimiento personal del declarante. Una declaración jurada que solo contiene conclusiones, sin hechos específicos que las apoyen no tiene valor probatorio. La declaración jurada suficiente para sostener o controvertir una moción de sentencia sumaria tiene que contener hechos específicos. Los tribunales no pueden considerar ni atribuir valor probatorio a una declaración jurada que no está basada en el conocimiento personal del declarante. *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 350-351 (2023); *Roldan Flores v. M. Cuebas et al.,* 199 DPR 664, 677-679 (2018).

El TPI no está obligado a hacer determinaciones de hechos cuando ha entendido que no existe controversia sobre ningún hecho esencial y solo resta aplicar el derecho. La Regla 36.4, *supra* únicamente obliga al tribunal a establecer los hechos probados, cuando (1) no se dicta sentencia sumaria sobre la totalidad del caso, (2) no se concede todo el remedio solicitado y (3) se deniega la moción de sentencia sumaria. *Pérez Vargas y Office Depot,* 203 DPR 687, 697-698 (2019).

En cuanto a la revisión de los foros apelativos, el Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de

Primera Instancia, al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra*, y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36, *supra.* El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es tarea del Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de un juicio de *novo*. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Consejo Tit. v. Rocca Dev. Corp. et als.,* supra; *Soto y otros v. Sky Caterers, supra; BPPR v. Cables Media,* supra; *Cruz, López v. Casa Bella y otros,* supra; pág. 924, *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

Al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de *novo*, si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

**Aplicación de las Reglas de Procedimiento Civil al Procedimiento Sumario Laboral.**

Las Reglas de Procedimiento Civil, aplican al Procedimiento Sumario Laboral, siempre y cuando no conflijan con sus disposiciones específicas o con el carácter sumario. 32 LPRA sección 3120.

### *González Santiago v Baxter Healthcare,* 202 DPR 281 (2019) y el Despido Injustificado.

El Tribunal Supremo de Puerto Rico analizó en *González Santiago v Baxter Healthcare, supra,* si la suspensión indefinida por más de tres meses de un empleado acusado de varios delitos graves constituyó un despido injustificado. El empleado en ese caso cometió el delito grave de actos lascivos contra un menor de edad. La mayoría resolvió que la acción del patrono constituía un despido justificado, debido a las circunstancias particulares del caso y la intensidad del agravio.[13] El tribunal concluyó que el patrono tomó una decisión razonable con el propósito de mantener el buen y normal funcionamiento de la empresa.

Según resolvió el tribunal:

(1)    El patrono puede adoptar los reglamentos y normas razonables que estime necesarias para el buen funcionamiento de su empresa y definir las faltas que por su gravedad podrían acarrear el despido como sanción.

(2)    El despido por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento de la empresa no es por justa causa.

(3)    El despido como sanción por la primera falta se justifica, si el acto o falta que lo ocasiona revela una actitud o un detalle en el carácter del empleado tan lesivo a la paz y al buen orden de la empresa. La gravedad y potencial del agravio pone en riesgo la seguridad, el orden o la eficiencia que constituyen el funcionamiento del negocio. Cuando se imputan

---

[13] El Juez Asociado Señor Kolthoff Caraballo no intervino. Por su parte, el Juez Asociado Señor Estrella Martínez emitió una opinión disidente. En síntesis, sostuvo en su disenso que un empleado no puede ser despedido *automáticamente* porque sea acusado de cometer un delito. A su entender el patrono tiene el peso de la prueba de demostrar que la acusación criminal afectó el buen y normal funcionamiento de su empresa. Sostuvo y citamos: "Por más repudiables que sean los delitos que originaron esta controversia laboral, Baxter tenía el peso de la prueba de demostrar cómo la acusación del señor González Santiago afectaba el buen y normal funcionamiento de la empresa. La mera acusación de la comisión de un delito no basta." Para el Juez Asociado Señor Estrella Martínez, las acusaciones por actos delictivos alegadamente ocurridos fuera del lugar de trabajo no sostienen el despido automático sin que el patrono demuestre alguna relación entre la conducta delictiva y los efectos, si algunos, que generó en las labores de su empresa.

acciones de este tipo es una imprudencia esperar su reiteración para despedir al empleado.

(4)     Las acusaciones contra un empleado por delitos graves justifican su despido.

(5)     El patrono en un proceso laboral no está obligado por la presunción de inocencia de un empleado contra el que se inició un proceso criminal.

(6)     El reglamento o manual de disciplina no tiene que incluir ciertas normas cuya violación constituye una falta mayor. Todo empleado conoce que existen conductas que constituyen faltas mayores o graves en las que nunca debe incurrir.

(7)     Una acusación criminal por el delito grave de actos lascivos contra una menor por su severidad y potencial de agravio pone en riesgo la seguridad, orden y eficiencia que constituyen el buen funcionamiento de un negocio.

(8)     El patrono tiene derecho a evaluar a sus empleados a base de los valores morales y del orden público prevaleciente en Puerto Rico que son de conocimiento general, cuando su incumplimiento: (1) puede mantener o alterar el buen y normal funcionamiento de la empresa y (2) sea una falta cuya intensidad de agravio lo requiera para proteger el normal y buen funcionamiento de la empresa.

(9)     La conducta que infringe este tipo de valores justifica el despido en la primera ocasión, aunque no haya sido previsto en las reglas y reglamentos de la empresa.

(10)    La presunción de inocencia solo aplica al procedimiento criminal.

**Ley de Transformación y Flexibilidad Laboral**

El empleado tiene el deber básico de abstenerse de incurrir en conducta impropia, desordenada, delictiva o inmoral que razonablemente pueda afectar los mejores intereses del patrono. Artículo 2.15 de la Ley Núm. 4-2017, 29 LPRA sección 122n(c).

### III

La controversia se reduce a determinar, si procede la desestimación sumaria de la reclamación por despido injustificado, presentada al amparo del procedimiento sumario laboral.

Aunque de ordinario la revisión de dictámenes interlocutorios que forman parte de un proceso sumario laboral no es aconsejable, a manera de excepción, en aquellos casos extremos en que la revisión inmediata, en esa etapa, disponga del caso, podemos atender el asunto. *Dávila, Rivera v. Antilles Shipping, Inc.,* 147 DPR 483, 498 (1999).

Así también, la Regla 52.1 de Procedimiento Civil, nos confiere autoridad para revisar resoluciones del TPI relacionadas a la denegatoria de una moción de carácter dispositivo, como la solicitud de sentencia sumaria. La revisión de la Resolución recurrida tampoco conflige con el procedimiento sumario laboral. Por el contrario, es cónsona con el procedimiento sumario que persigue la solución rápida de las reclamaciones presentadas por los empleados contra sus patronos. La expedición del recurso es necesaria para corregir el error de derecho que cometió el TPI al no aplicar la norma establecida por el Tribunal Supremo de Puerto Rico en *González Santiago v. Baxter Healthcare,* supra. Según dicha norma, las acusaciones por delito contra el recurrido son suficientes para justificar su despido.

El propio TPI determinó como hechos incontrovertidos que la excompañera sentimental del recurrido presentó acusaciones graves en su contra por escalamiento, apuntar con un arma de fuego y una violación mediante penetración digital. Igualmente dio por hecho que: (1) los cargos fueron radicados, (2) el recurrido no pudo prestar la fianza y fue ingresado en prisión, (3) la fianza fue reducida y pudo salir a enfrentar el proceso criminal bajo fianza. Ambas partes coinciden en que no existen controversias sobre las acusaciones por

delitos graves y el proceso criminal iniciado contra el recurrido. Durante su deposición el propio recurrido admitió que: (1) fue arrestado y llevado al tribunal,[14] (2) se determinó causa en su contra por seis cargos,[15] (3) salió bajo fianza con un grillete,[16] (4) admitió que compartió videos íntimos suyos y de su expareja con un tercero,[17] (5) se declaró culpable de un 3.1 para que cambiaran la denuncia,[18] (6) hizo alegación de culpabilidad por un delito grave,[19] (7) las denuncias con las que fue confrontado son parte de su expediente criminal,[20] (8) se declaró culpable de enviar los videos y de botar a su expareja de la casa,[21] y (9) el video era sobre un acto sexual.[22]

El TPI estaba obligado por los hechos que determinó probados a resolver que el despido fue justificado. Por consiguiente, estaba obligado a desestimar la querella, conforme a lo resuelto en *González Santiago v. Baxter Healthcare,* supra. Las acusaciones por delitos graves contra el recurrido, de por sí justificaban su despido como primera sanción. La peticionaria no estaba obligada por la presunción de inocencia que cobija al recurrido en el proceso criminal. El Tribunal Supremo de Puerto Rico resolvió que esa presunción no aplica en los procedimientos laborales. El patrono ni siquiera tenía que incluir en el manual de disciplina las normas cuya violación constituyen una falta mayor. La Ley Núm. 4-2017, *supra,* exige al empleado el deber básico de no cometer conducta impropia, desordenada, delictiva o inmoral que razonablemente pueda afectar los mejores intereses del patrono. El despido como sanción por la

---

[14] Entrada núm. 34, SUMAC del TPI; deposición del recurrido, líneas 2 a 4, pág. 46.
[15] Id., líneas 19-21 pág. 53.
[16] Id., línea 12, pág. 59.
[17] Id., línea 6, pág. 83.
[18] Id., línea 25 pág. 88 y líneas 10-11 pág. 96.
[19] Id., línea 14 pág. 97.
[20] Id., línea 21 pág. 113.
[21] Id., líneas 22 -24, pág. 114.
[22] Id., línea 12, pág. 148.

primera falta se justifica cuando el acto imputado al empleado revela una actitud y carácter lesivos a la paz y al buen orden de la empresa. Los delitos graves por los que el recurrido fue acusado tipifican esa conducta y ponen en riesgo los mejores intereses de la peticionaria. Las acusaciones criminales contra el recurrido por los delitos graves de escalamiento, apuntar con un arma de fuego y violación mediante penetración digital, son de tal severidad y potencial agravio que atentan contra la seguridad, el orden y la eficiencia de la peticionaria. Por esa razón, resolvemos que la peticionaria tomó la decisión razonable de despedir al recurrido para mantener el buen y normal funcionamiento de su empresa.

IV

Por los fundamentos anteriormente expuestos, se expide el recurso, para revocar la Resolución recurrida y dictar sentencia sumaria a favor de la peticionaria. Por consiguiente, se desestima la querella por despido injustificado.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones